DEXTER YATES v. CITY OF RALEIGH; HOUSING AND NUISANCE DIVI-
SION OF THE PUBLIC WORKS DEPARTMENT OF THE CITY OF
RALEIGH; B. WAYNE CAMERON; AND BEAL BARTHOLOMEW

No. 7910SC930

(Filed 15 April 1980)

**Municipal Corporations §§ 4, 12.1— city's abatement of alleged nuisance—destruc-
tion of personal property—sufficiency of complaint to state claim**

> Plaintiff's complaint stated a claim for relief sufficient to survive a motion
> to dismiss under G.S. 1A-1, Rule 12(b)(6) where plaintiff alleged that defend-
> ants wrongfully took and destroyed his concrete finishing equipment, personal
> property which was not a part of the alleged nuisance being abated.

APPEAL by plaintiff from *Godwin, Judge.* Order entered 8
May 1979 in Superior Court, WAKE County. Heard in the Court of
Appeals on 27 March 1980.

In this civil proceeding plaintiff seeks to recover $5,200.00 for
the alleged "wrongful taking" of his personal property by the
defendants, and for "loss of income" resulting from the alleged
wrongful taking of the property. In his complaint plaintiff pur-
ports to allege four separate "claims for relief" which are sum-
marized as follows:

First, plaintiff averred that the defendants, acting under col-
or of state law and purportedly "in furtherance of carrying out
the provisions of section 12-2 of the Code of the City of Raleigh"
to abate a nuisance, caused to be removed from premises rented
by him a quantity of tools and equipment which he used in his
business as a "concrete contractor." He claimed that the defend-
ants had thereafter disposed of the property by depositing it in a
City "refuse dump." In wrongfully removing and disposing of his
private property, plaintiff contended the defendants exceeded
whatever statutory authority they possessed.

Secondly, plaintiff asserted that the ordinance under which
the defendants purported to act was unconstitutional in that it
failed to require actual notice to him "of any actions by the De-
fendants on account of which the Plaintiff might forfeit his prop-
erty. . . ." Such failure of notice, he charged, resulted in a
deprivation of his property without due process of law.

Plaintiff's third claim posed a theory of relief based on trespass in that defendants, "without any lawful justification," entered upon his premises and unlawfully removed his property.

Finally, plaintiff asserted a claim for relief based on his allegations that the defendants had wrongfully converted his property by disposing of it in such a manner that he was unable to retrieve it.

Defendants filed an answer wherein they prayed that the "action be dismissed" for that the plaintiff had "failed to state a cause of action for which relief may be granted." Defendants generally denied the material allegations of plaintiff's complaint and further alleged that the ordinance did not require notification to the plaintiff and that, in any event, they had not removed from the plaintiff's premises the property described in his complaint.

Thereafter, the trial judge entered the following Order:

.   .   .

2. The complaint in this action contains allegations of tortious conduct by the City of Raleigh and its agents; more specifically trespass and conversion.

3. Plaintiff alleges the tortious behavior took place under color of law and more specifically under the provisions of Chapter 12 Section 2 of the Raleigh City Code.

4. No allegations were made which would indicated [sic] that the agents of the City of Raleigh acted beyond the scope of their authority when they entered the plaintiff's premises to abate a public nuisance or when they actually abated the nuisance.

5. The City of Raleigh has not purchased liability insurance pursuant to G.S. 160A-485 which would cover the types of tortious activity alleged by plaintiff. Because of the lack of such insurance coverage, the City of Raleigh has retained its sovereign immunity against such claims.

6. Plaintiff has also questioned the constitutionality of the notice provisions of Chapter 12 Section 2(b) of the Raleigh City Code and the resolution of that question is unaffected by the disposition of plaintiff's tort claims. Plaintiff contends

that the notice provision of Chapter 12 section 2(b) of the Raleigh City Code failed to provide notice to him of a nuisance abatement procedure and thereby deprived him of due process of law.

7. Section 51 of the Raleigh City Charter grants authority to the City of Raleigh to require that the owners of real property be responsible for the maintenance of the property in a condition free from public health hazards caused by trash, obnoxious weeds and undue growth.

The nuisance abatement authority of the City of Raleigh is an exercise of the police power and is a governmental function authorized by state law.

8. Section 12-2 of the Raleigh City Code denominates the owner of real property as the person responsible for its maintenance in a safe condition.

9. Notice of the proceedings complained of were [sic] timely given to the owner of the real property subject to this action.

### CONCLUSIONS OF LAW

1. It is concluded as a matter of law that the City of Raleigh, through the exercise of its sovereign immunity, is exempt from the tort claims made in this cause by plaintiff. Defendants were acting within the scope of their legal authority.

2. It is further concluded as a matter of law that Plaintiff was not deprived of due process of law because proper notice was given to the record owner of the real property involved as required by law and that such notice should have been constructive notice to Plaintiff and does fulfill the requirement of due process.

NOW, THEREFORE, BE IT ORDERED AND DECREED THAT:

1. The plaintiff's tort claims are dismissed.

2. Chapter 12 Section 2 of the Raleigh City Code is not violative of the due process provisions of the United States Constitution or the North Carolina Constitution.

.  .  .

Plaintiff appealed.

*Kimzey, Smith & McMillan, by Duncan A. McMillan, for the plaintiff appellant.*

*City Attorney Thomas A. McCormick, Jr., for the defendant appellees.*

HEDRICK, Judge.

At the outset we point out that the record on appeal is remarkable in what it fails to contain. The ordinance pleaded by the plaintiff as being unconstitutional, cited by the defendants as their authority for taking plaintiff's property, and finally declared constitutional by the trial judge, is not in the record, and as far as the record discloses, was not introduced into evidence. The provisions of the City Charter to which the judge referred in his order and apparently upon which he relied to some extent to support the order of dismissal are not in the record, and as far as we can determine, were not introduced into evidence. The notice provided to the property owners pursuant to the ordinance, which is challenged by the plaintiff for its alleged inadequacy, cited by the defendants in conjunction with the ordinance for their authority in allegedly removing plaintiff's property to the city dump, and declared adequate in the judge's order of dismissal, is likewise conspicuous for its absence from the record and, supposedly, was not offered into evidence. The "oral motion" made by the defendants "to dismiss" plaintiff's claim "on the pleadings," and apparently ruled on in the order of dismissal, is not in the record for our perusal and analysis. Finally, the evidence on which defendants relied to demonstrate that the City had not waived its governmental immunity by procuring liability insurance, also recited in the order of dismissal as the primary basis for the order, and declared by defendants at oral argument to be the principal reason for the dismissal, does not appear in the record.

We think it hardly necessary to elaborate further on the deplorable deficiencies of the record. Its condition compels us, however, to treat the Order appealed from as one dismissing plaintiff's claim pursuant to Rule 12(b)(6), G.S. § 1A-1, for failure to state a claim upon which relief can be granted.

"The sufficiency of a claim to withstand a motion to dismiss is tested by its success or failure in setting out a state of facts which, when liberally considered, would entitle plaintiff to some relief." *Carolina Builders Corp. v. AAA Dry Wall, Inc.*, 43 N.C. App. 444, 446, 259 S.E. 2d 364, 366 (1979). If it appears to a certainty that no state of facts could be proved in support of the claim so as to entitle plaintiff to some relief, the complaint should be dismissed. 2A Moore's Federal Practice § 12.08 (1979). *Accord, Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970); *Kelly v. Briles*, 35 N.C. App. 714, 242 S.E. 2d 883 (1978).

With respect to the claim alleging a wrongful appropriation of private property set out in this plaintiff's complaint, we find the decision of Justice (later Chief Justice) Bobbitt in *Rhyne v. Town of Mount Holly*, 251 N.C. 521, 112 S.E. 2d 40 (1960), instructive. In *Rhyne*, plaintiff alleged that agents of the defendant Town entered upon his property with a bulldozer and, in the process of cutting down weeds claimed to constitute a nuisance, they also bulldozed away more than 100 oak saplings growing on the property. The town defended its action on the grounds that a local ordinance authorized it to cut weeds in an effort to abate a nuisance and that its actions under the ordinance were performed in the exercise of a governmental function. Thus, the town claimed that it was protected by sovereign immunity. The plaintiff contended that the town had acted in excess of the authority conferred it by the provisions of the ordinance and therefore could not shield itself from liability by claiming governmental immunity. The jury rendered a verdict for plaintiff. On appeal by the defendant, Justice Bobbitt stated the relevant inquiry as follows:

> Where defendant, acting under its power to abate a nuisance constituting a menace to health, goes upon plaintiff's lot, without plaintiff's permission or consent, for the purpose of eradicating what defendant deems to be such nuisance, and in so doing destroys trees thereon that do not in fact constitute a nuisance, is plaintiff's right to recover compensation for the impairment in value of his property caused by the destruction of the trees defeated because defendant was then engaged in the performance of a governmental function?

*Id.* at 525, 112 S.E. 2d at 44. Justice Bobbitt answered the question with a resounding "No," and affirmed the verdict for the plaintiff. We find his reasoning as persuasive, and the principles of law on which he relied as sound, today as then. Citing numerous North Carolina cases as well as decisions from many other jurisdictions in support, he concluded:

> Where a municipal corporation, in the exercise of its governmental power to abate nuisances, enters upon and damages private property by the destruction of trees, buildings, *etc.*, thereon, it is liable for the payment of just compensation unless its acts were *in fact* necessary to remove or abate a nuisance.

*Id.* at 528, 112 S.E. 2d at 46 [emphasis in original]. Moreover, he quoted approvingly from 6 McQuillan, *Municipal Corporations* § 24.87 (3d ed. 1949): "[N]o one, not even the municipal corporation in which an alleged nuisance is located, is protected against suit for damages for voluntarily removing that which is not a nuisance. . . ."

It is hard to imagine a case more squarely on point with the one before us than the *Rhyne* decision.

In our opinion, the plaintiff's complaint, when considered in light of the foregoing principles of substance and procedure, clearly states a claim for relief sufficient to survive a motion to dismiss under Rule 12(b)(6). Plaintiff has alleged a claim for the defendants' wrongful taking and destruction of his personal property which was not part of the nuisance being abated. Defendants have asserted only two defenses: (1) They were authorized by ordinance to do what they did. (2) In any event, and primarily, they are fully protected from suit because they were acting under the police power to exercise a governmental function. However, in view of the controlling rules of law announced in *Rhyne*, the question whether defendants have acted *lawfully* within the police power to abate a nuisance pursuant to a constitutional ordinance has yet to be determined. Simply put, were the defendants' acts in removing the plaintiff's concrete finishing equipment *in fact* necessary to abate the nuisance allegedly existing?

Defendants urge us, however, to consider the "much more recent" case of *Horton v. Gulledge*, 277 N.C. 353, 177 S.E. 2d 885

(1970). Defendants purport to rely "heavily" on this case and contend that it is a "better statement of the law [than *Rhyne*] as it relates to compensation for nuisance abatements." They quote from the opinion, written by Justice Lake, for the proposition that "any nuisance may be removed without compensation when the municipality has the authority to abate such nuisances."

We agree. We agree that Justice Lake's opinion is a good statement of the law. We disagree that the case extends the police power so as to allow a municipality to *unlawfully* take or destroy private property under the guise of exercising a governmental function, and thereafter to hide behind the shield of sovereign immunity. Had defendants evaluated Justice Lake's opinion further, they would have discovered that "*the limit of the police power is the reasonable necessity for the action in order to protect the public.*" *Id.* at 362, 177 S.E. 2d at 891 [Our emphasis]. That statement accords fully with the principles of law laid down in *Rhyne*. Furthermore, Justice Lake thereafter even more lucidly enunciated the limits imposed on the exercise of the police power in carrying out the governmental function of abating a nuisance. He quoted from 16 Am. Jur. 2d, *Constitutional Law* § 368 as follows:

> [P]ublic necessity is the limit of the right to destroy property which is a menace to public safety or health *and the property cannot be destroyed if the conditions which make it a menace can be abated in any other recognized way*. [Our emphasis.]

We believe that statement is just another way of declaring, as Justice Bobbitt did in *Rhyne*, that the municipality cannot take, remove or destroy private property unless such action is "*in fact* necessary to remove or abate a nuisance." *Rhyne, supra* at 528, 112 S.E. 2d at 46 [emphasis in original].

Plaintiff in the case before us alleged that the defendants wrongfully removed and disposed of concrete finishing equipment which, in and of itself, did not constitute a nuisance and which was not *in fact* necessary to remove to abate the nuisance allegedly existing. We hold that the trial judge erred in dismissing the plaintiff's claim. His Order dated 8 May 1979 is reversed, and the cause is remanded to the Superior Court for further proceedings consistent with this Opinion.

---

Slizewski v. Seafood, Inc.

---

Reversed and remanded.

Judges ARNOLD and ERWIN concur.