LETA PEARCE v. AMERICAN DEFENDER LIFE INSURANCE COMPANY

No. 8210SC851

(Filed 21 June 1983)

**Insurance § 14— life insurance—accidental death provision—death in military aircraft—motion to dismiss improperly granted**

Plaintiff's complaint stated a claim upon which relief could be granted and the trial court erred in granting defendant's motion to dismiss where plaintiff's now-deceased husband bought a life insurance policy which provided for double coverage in the event of accidental death but which created certain exceptions for military planes; where deceased had questioned defendant's insurance company concerning his coverage shortly after he entered the United States Air Force; where the insurance company replied that the deceased was fully covered; and where the insured was killed in an accident involving a military aircraft on which he was acting as a crew member.

Judge WEBB concurring.

APPEAL by plaintiff from *Brewer, Judge.* Order entered 9 July 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 6 June 1983.

This is a civil action wherein plaintiff seeks payment of certain proceeds under an insurance policy issued by defendant to plaintiff's now-deceased husband.

The policy in question was issued in 1968 in the face amount of $20,000 but includes an "Accidental Death and Dismemberment Agreement" which provides for the payment of $40,000 in the event of the insured's accidental death. This "Accidental Death and Dismemberment Agreement" was made subject to the following exceptions:

EXCEPTIONS: This agreement does not cover death or injuries resulting directly or indirectly from: (a) travel or flight in or descent from any species of aircraft if (i) you are a pilot, officer, or other member of the crew of such aircraft, are giving or receiving any kind of training or instruction, or have any duties whatsoever aboard such aircraft while in flight, or (ii) the aircraft is maintained or operated for military or naval purposes, or (b) military, naval, or air service or any allied branch thereof of any country at war, . . . .

In 1971, the insured entered the United States Air Force and began training at The Navigation School. The insured's training involved approximately 250 hours of flying time. After completion of his training at the Navigation School, the insured anticipated further flying while in the Air Force. After beginning his training, the insured became concerned about the extent of his coverage under the policy issued by defendant. The insured asked an insurance agent to inquire of defendant concerning the extent of the policy's coverage in the insured's situation. On 4 May 1971, the agent sent the following letter of inquiry to defendant:

RE: Douglass Allen Pearce, Pol. No. 82-0058

Gentlemen:

Lt. Pearce signed an application in 1968 for $20,000 and he is concerned as to whether or not he is fully covered now that he is in the USAF. He is a 2nd Lt. enrolled in The Navigation School at Mather, Ca. He is flying the T-29 which is a trainer for the Nav School. He has flown 6 hours so far and expects to fly approximately 250 hours during the next 12 months. After graduation he does not have any idea as to which plane he will be assigned.

Will you please check over his coverage and advise us. I feel sure that he is fully covered, however, to make him feel at ease and appreciate his policy and its protection—he would like to have it spelled out over the signature of one of your executives.

Thanks for your usual very prompt service.

On 12 May 1971, the insured received the following letter from defendant:

Policy Number: 82-0085

Dear Mr. Pearce:

We have received Mr. C. L. Dickerson's letter of May 4, 1971, concerning the coverage of your above numbered policy.

Your policy was a $20,000.00 College Defender Program with a $40,000.00 Accidental Death and Dismemberment Rider, $10,000.00 Guaranteed Insurability Option. Your program does not contain a war clause. In other words, the basic program is in full force and effect regardless of your occupation. The Accidental Death Rider portion of the policy would not be payable should your death occur as the result of a direct act of war. However, in addition to the basic policy, this Accidental Death Rider would also be payable should his death occur while in the Armed Forces but not as the result of an act of war.

Should this letter not fully answer your questions or if you would like additional information, please write directly to us or call us collect.

Sincerely yours,

(Miss) Linda Wynne
Policyowners' Service

The insured made no further inquiry and continued paying the premiums on the policy. On 24 July 1979, the insured was killed in an accident involving a military aircraft on which he was acting as a crew member. Defendant has paid plaintiff $20,000 as a result of the insured's death, but has refused to pay the additional $20,000 due under the policy in case of accidental death.

On 25 February 1982, plaintiff filed a complaint alleging the above facts. On the basis of these allegations, plaintiff made nine claims for relief ranging from simple contract to unfair trade practices. Plaintiff prayed the court to award her the $20,000 balance of the $40,000 said to be owing under the policy, treble damages and attorneys' fees under the unfair trade practices theory, actual and punitive damages under the theory of fraud, and to tax the costs of the action to defendant.

On 3 April 1982, counsel for defendant moved the court, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure to dismiss plaintiff's Complaint for failure to state a claim upon which relief could be granted. The hearing on this motion was held on 9 July 1982. From an order granting defendant's motion to dismiss under Rule 12(b)(6), entered after the hearing, plaintiff appealed.

*Akins, Mann, Pike and Mercer, by Jerome J. Hartzell, for plaintiff-appellant.*

*Reynolds and Howard, by Ted R. Reynolds, for defendant-appellee.*

HILL, Judge.

In their briefs, the parties state the following versions of the question presented on appeal:

> Plaintiff: [W]hether, assuming the accuracy of plaintiff's allegations, defendant has acted wrongfully.

> Defendant: [W]hether such action [referring to the May, 1971 exchange of letters] can be construed as placing within the coverage of a life insurance policy risks not originally insured against.

There in no dispute about the facts of this case. The sole issue in the case is whether the insured's death is covered under certain terms of a life insurance policy, issued by defendant, which provide for the payment of $40,000 to the beneficiary in the event of the insured's accidental death. The resolution of this issue depends upon the construction and effect given to the letters, set out above, exchanged by the insured, through an agent, and defendant.

The case presents a factual situation of first impression in this jurisdiction. We cannot say which of the constructions urged upon us by the parties is correct. Our review is limited to a consideration of whether it was error for the trial court to dismiss plaintiff's Complaint for failure to state a claim upon which relief could be granted. We hold that it was.

In ruling on a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the test to be applied by the court is whether the complaint alleges a set of facts which would entitle the plaintiff to some relief. *Carolina Builders Corp. v. AAA Drywall, Inc.,* 43 N.C. App. 444, 259 S.E. 2d 364 (1979); *Yates v. City of Raleigh,* 46 N.C. App. 221, 264 S.E. 2d 798 (1980). For purposes of testing the sufficiency of a complaint to withstand a motion to dismiss under 12(b)(6), the allegations contained therein are liberally construed and treated as true. *Shoffner Industries, Inc. v. W. B. Lloyd Construction Co.,* 42 N.C. App. 259, 257 S.E. 2d 50, *disc. rev. denied,* 298 N.C. 296, 259 S.E. 2d 301 (1979). A complaint is sufficient to withstand a motion to dismiss when no insurmountable bar to plaintiff's claim appears on the face of the complaint. *Shoffner Industries, Inc. v. W. B. Lloyd Construction Co., supra; United Leasing Corp. v. Miller,* 45 N.C. App. 400, 263 S.E. 2d 313, *disc. rev. denied,* 300 N.C. 374, 267 S.E. 2d 685 (1980). A complaint should not be dismissed unless it appears to a certainty that no state of facts that could be proved in support of plaintiff's claim would entitle him to relief. *Yates v. City of Raleigh, supra* at 225, 264 S.E. 2d at 800. *See generally* 2A Moore's Federal Practice § 12.08 (1983).

Both parties expend considerable effort in their respective arguments proceeding from the premise that the exchange of letters in May of 1971 somehow broadens the coverage of the policy, creating attendant problems of agency and contract law. Without passing on the merits of these contentions, our reading of plaintiff's Complaint and the letters therein establishes to our satisfaction that plaintiff has, at the very least, pleaded no insurmountable bar to her claim.

The 4 May 1971 letter, written on behalf of the insured to defendant, states specifically that the insured is in the armed forces, flying as a crew member on an aircraft, and anticipating later assignment to other aircraft. The letter requests defendant,

on the basis of these facts, to advise the insured as to the extent of his coverage under the policy. The letter recited the insured's name and policy number. The letter also asks that the requested advice be spelled out over the signature of one of the executives of defendant insurance company.

Defendant responded directly to the insured in a letter dated 12 May 1971. The response letter said unequivocally that "the basic program is in full force and effect regardless of your occupation." The response letter further stated that the Accidental Death Rider in the policy would be payable if the insured's death occurred while in the armed forces. The letter said that the Accidental Death Rider would not be payable if the insured's death was the result of an act of war.

There is no mistaking the nature of the 4 May 1971 letter to defendant and no misunderstanding the question asked. Defendant was notified of the insured's entry into the Air Force and the fact that he would be serving as a crew member on a military aircraft. Nevertheless, the response letter of 12 May 1971 did not say that the policy precluded payment of the Accidental Death Rider should the insured's death occur while he was engaged in his occupation, which involved considerable flying as a crew member on a military aircraft.

Without citing them as controlling, our research has disclosed two cases where accidental death benefits were held to be payable in situations similar to the one now before us. In *Schifter v. Commercial Travellers' Mutual Accident Association,* 183 Misc. 74, 50 N.Y.S. 2d 376, *aff'd,* 269 App. Div. 706, 54 N.Y.S. 2d 408 (1944), the insurance contract contained aviation and military exceptions similar to those in the present case. The Accident Association in *Schifter* attached an endorsement to the certificate of membership issued to the insured which said that membership in the Association covered military training "regardless of those provisions which except from payment any claims arising where [the insured] has changed to a hazardous occupation or entered the armed forces of the Nation in time of war." 50 N.Y.S. 2d at 377. The judgment in *Schifter* turned upon the construction to be given to the membership certificate as modified by the endorsement attached. The court found that the insurer knew or should have known that military training involved the possibility of air

training. The court also found that the insurer had no obligation to issue the endorsement but, having done so, was bound by it.

In *Trahan v. Southland Life Insurance Co.*, 155 Tex. 548, 289 S.W. 2d 753 (1956), the insured rejected a life insurance policy offered by defendant because it contained two aviation riders, one covering military flight and the other covering civilian flight. The insured was in the Air Force and wanted full coverage, even while flying. The insurance company removed one of the riders and the insured purchased the policy. The *Trahan* court said that the failure to remove one of the two riders, when the company knew of the reason for the insured's initial refusal, created an ambiguity in the contract which was properly construed against the company. *See* Couch on Insurance §§ 41:555, 41:566 (1982).

North Carolina courts have consistently held that the plain and unambiguous terms of an insurance policy must be given effect and the policy enforced accordingly. *See, e.g., Duke v. Mutual Life Insurance Co.*, 286 N.C. 244, 210 S.E. 2d 187, *reh. denied*, 286 N.C. 547, --- S.E. 2d --- (1974). Where ambiguities exist, it is just as well-established that they are to be resolved in favor of the insured. *See, e.g., White v. Mote*, 270 N.C. 544, 155 S.E. 2d 75 (1967). "[A] contract of insurance should be given that construction which a reasonable person *in the position of the insured* would have understood it to mean and, if the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, . . . ." *Grant v. Emmco Insurance Co.*, 295 N.C. 39 at 43, 243 S.E. 2d 894 at 897 (1978). [Emphasis added.]

Although the North Carolina cases cited above concern the construction of language in the policy itself, the rules of construction employed in them can be applied to the situation before us. The 4 May 1971 letter to defendant asks whether defendant's interpretation of the Accidental Death Rider in the policy covers him in his then-current occupation. The answer received is capable of being construed by one in the insured's position as bringing him within the coverage of the policy or at least making ambiguous the pertinent terms of the policy.

Whether the policy, as construed, brings the accident resulting in the insured's death within its coverage is a question which the limited scope of our review will not permit us to

answer. We hold only that plaintiff's Complaint does state a claim for relief which, if proven, would sustain a judgment in her favor. The order of the trial court granting defendant's motion to dismiss is therefore vacated and the cause remanded for further proceedings.

Vacated and remanded.

Judges WEBB and BECTON concur.

Judge WEBB concurring.

I concur. I believe the majority is correct in reversing the judgment of the superior court. I believe the plaintiff has made allegations which if proven would estop the defendant from denying coverage under the insurance policy. If the plaintiff can prove that after an inquiry by the deceased the defendant sent the letter of 12 May 1971 to the deceased, a jury could conclude the deceased relied on this letter and did not buy insurance which would have covered him for an accidental death while flying in a military aircraft. This would support a judgment of estoppel.